CHARLES H. ROBINSON & another *vs.* LEWIS J. BIRD.

Suffolk.  January 20, 1893. — March 3, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Conversion — Conditional Sale — Rights of Mortgagee — Constructive Notice.*

A. delivered goods to B., and B. agreed in writing to pay therefor by instalments, and not to sell or mortgage the same so long as any payments were due. B. mortgaged the goods to C., who took without notice and for value, and had the goods sold by auction for breach of the mortgage, which had been duly recorded in the office of the city clerk. At the time of the mortgage B. was in default according to the agreement, and by the terms thereof A. had an immediate right of possession without demand or notice. *Held,* that the auctioneer was liable to A. for conversion of the goods.

TORT for conversion. The case was submitted to the Superior Court, and, after judgment for the plaintiffs, to this court, on appeal, on agreed facts, in substance as follows.

The plaintiffs, who were dealers in furniture in Boston, on February 9, 1886, sold to Mrs. Linda Bryant a quantity of furniture under the terms of a written agreement, dated February 9, 1886, which provided as follows:

" For the use of the above mentioned articles, and as rent for the same, I have this day paid to the said C. H. Robinson & Co., as rent in advance, the sum of _____ dollars, and promise further to pay to them and their legal representatives the sum of thirty-two dollars per month, the second payment to be made on the thirteenth day of March, 1886, and until such time as the sums so paid and to be paid by me shall amount to the sum of

$1,056.86, and such further sums as may be added to the above amount by me, at which time said rent shall cease, and said articles become my absolute property. But in case of failure to pay said rent as aforesaid, the said C. H. Robinson & Co., or their agents, may, without demand or notice, or being deemed guilty of any trespass or tort, and without thereby rendering themselves liable to refund any sums received by them as rent aforesaid, enter any house or place where said articles may be, and examine, or take possession of and remove said articles therefrom. And I further agree that, so long as said rent shall be payable as aforesaid, I will not injure, sell, mortgage, or re-let the said articles, or remove the same from above mentioned place; and that, in case of failure to pay said rent, I will, on demand, return said articles to the said C. H. Robinson & Co., or their legal representatives."

The furniture was delivered to Linda Bryant at Allston, on February 9 and 10, 1886, and was afterwards removed, with the consent of the plaintiffs, to the Oakland House, Oak Square, Brighton, where it was seen by the collectors of the plaintiffs. It was afterwards removed, with the consent of the plaintiffs, to the Oregon House, Washington Street, Boston, where it was also seen by their collectors and representatives. On September 22, 1886, Linda Bryant mortgaged to one John Stetson, of Boston, for the sum of three hundred dollars, all the property in the Oakland House, Oak Square, Brighton, which mortgage included and covered the furniture claimed by the plaintiffs, beside other things set forth in the mortgage, which mortgage was duly recorded in the clerk's office of Boston. In August, 1890, Stetson, the mortgagee, the mortgage being overdue, and part of the interest and the entire principal being unpaid, duly foreclosed and took possession, through his agent, of all the property of the Oregon House, including goods received by Linda Bryant from the plaintiffs under the agreement, and carried the same to the public auction-rooms of the defendant, in Boston; and the defendant, acting in the capacity of auctioneer, sold the property at his said auction-rooms and paid over the proceeds less his commission to Stetson, in ignorance of any claim or rights of the plaintiffs, and in ignorance of the written agreement; and Stetson received from

the defendant the proceeds from the sale of the property, in ignorance of any interest of the plaintiffs in the same, and ignorant of the fact that any part of, the property covered by the mortgage was purchased of the plaintiffs under the terms set forth in the written agreement. The defendant acted in good faith, and received the first information of any claim of the plaintiffs after the goods were sold and had passed out of his possession, and the proceeds had been paid over to Stetson. Under the written agreement, the amount to be paid by Linda Bryant to the plaintiffs was thirty-two dollars per month; at the time the goods were delivered, on February 9 and 10, 1886, the sum of sixty dollars was paid by Linda Bryant on account of the total of ten hundred and fifty-six dollars, and Linda Bryant was at all times, after the payment of the sixty dollars, in arrears with her payments. The plaintiffs never enforced the return of the goods or retook possession of the same under the power expressed in the written agreement, and never enforced any demand whatever upon either Linda Bryant or the defendant for the return of the goods, or the amount due on the written agreement, except that the plaintiffs did, through their agents and collectors, constantly endeavor to collect the amounts due from Linda Bryant by repeated demands upon her, in which they were not successful, except to collect at various times during four years or more certain amounts indorsed on the back of the agreement, which in the aggregate amounted to six hundred and sixteen and $\frac{30}{100}$ dollars. The plaintiffs were ignorant, and had no actual notice of the Stetson mortgage until discovered by them after the goods had been sold by the defendant, and after the defendant had turned the proceeds over to Stetson. Linda Bryant disappeared just before the date when Stetson took possession of the property under his mortgage. Up to the time of the foreclosure, the plaintiffs had, at all times, the opportunity, if they desired, to retake possession of the goods under the contract.

If the plaintiff was entitled to recover, he was to receive a judgment of two hundred dollars and costs; otherwise, judgment was to be for the defendant and his costs.

*R. R. Gilman & W. H. Mitchell,* for the defendant.

*W. F. Kimball,* for the plaintiffs.

HOLMES, J. The defendant is an auctioneer, who has sold personal property belonging to the plaintiffs. Therefore he is liable for a conversion, unless he can show some other excuse or justification than his good faith and his ignorance of the plaintiff's title. *Coles* v. *Clark*, 3 Cush. 399. *Hoffman* v. *Carow*, 22 Wend. 285. *Cochrane* v. *Rymill*, 40 L. T. (N. S.) 744. *Hollins* v. *Fowler*, L. R. 7 H. L. 757. The mere fact that the plaintiffs made a bailment to Mrs. Bryant, and that she mortgaged the goods to Stetson, who took without notice and for value, and directed the present sale, is not such a justification. The passage to the contrary in the note to *Wilbraham* v. *Snow*, 2 Wms. Saund. 47 a, cited in *Vincent* v. *Cornell*, 13 Pick. 294, 296, is a misunderstanding of the Year Books, on a matter as to which their doctrine no longer is the law, as every one knows, and as may be seen from the later additional note. See *Hirschorn* v. *Canney*, 98 Mass. 149, 150, 152; *Coggill* v. *Hartford & New Haven Railroad*, 3 Gray, 545. The explanation of the early law is a matter of antiquarianism, which would be out of place here.

If at the time of the sale Mrs. Bryant had had a right of possession, to the exclusion of the plaintiffs, which was not terminated by the sale, the plaintiffs could not have maintained trover; and this principle is applied against a seller upon a conditional sale, so called, where the plaintiff reserves the title, if the time for payment has not arrived at the time of the alleged conversion. *Newhall* v. *Kingsbury*, 131 Mass. 445. *Day* v. *Bassett*, 102 Mass. 445. *Fairbank* v. *Phelps*, 22 Pick. 535. *Vincent* v. *Cornell*, 13 Pick. 294.

But in the case at bar not only had Mrs. Bryant expressly agreed not to sell or mortgage the goods, but at the time of the mortgage to Stetson and of the sale by the defendant she was in default for the so called rent, and by the words of her agreement the plaintiffs had an immediate right of possession without demand or notice.

The plaintiffs have not contributed to the defendant's mistake, as in *Hills* v. *Snell*, 104 Mass. 173. There the plaintiffs, who were warehouse men, not owners of the goods in question, made the mistake of delivering the wrong man's flour to one who sold to the defendant, and it was held that they could not maintain trover after he had used it in good faith. It is sug-

gested that the plaintiffs had constructive notice of the mortgage, and therefore should be deemed to have waived their rights. We do not see why, but it is enough to say that the plaintiffs had not the constructive notice supposed. Recording the mortgage did not affect them. *George* v. *Wood*, 9 Allen, 80, 83. *Western Union Telegraph Co.* v. *Caldwell*, 141 Mass. 489, 493. *Bates* v. *Norcross*, 14 Pick. 224, 231.

*Judgment for plaintiffs.*